The opinion of the court was delivered by
Manning, C. J.
James L. Stirling died in April 1860 in the parish of West Feliciana, leaving a wife, and mother and brothers and sisters surviving, but no children. By his will, which was duly probated, he gave all of his personal! property to his wife, except three notes of *170 David Barrow for $7,500 each, and the money in the hands of his commission merchant, which he directed should be disposed of as the law directs. His widow was testamentary executrix, who qualified, administered the estate, and in February 1862 filed her final account, which was homologated. That account shews the sum of $12,625.31 for distribution among the heirs, who are the present plaintiffs, and for its re-' covery this suit is brought.
In that account enter the three Barrow notes, not then collected, but charged as of the sum which the principal and interest then aggregated, and they were the largest asset of the estate — amounting to nearly twenty-five thousand dollars. In June 1863 Barrow offered to pay — rather demanded to pay them. There was but one currency in use then, i. e. the Treasury notes of the Confederate States. Mrs. Stirling objected to receiving payment in those notes. In her testimony she says she was prevailed on to receive it, and that the money or Treasury notes thus received were handed to Mr. Winter, who promised to invest them in foreign exchange, and if he could not succeed in. doing that, he would invest them to the best of his ability. She thought he had invested them in cotton. What Winter did with them no cne knows. The money was utterly lost to the estate. The question now .is, shall the executrix be heid responsible for the sum reoeived, or acknowledged in her account to have been received by her ?
War prevailed then. The parish where Mrs. Stirling lived was open' to the incursion of the military forces then invading the country, and was in their actual possession. “ After the federal forces had taken possession of the country, says Mrs. Stirling, I had great trouble in hiding this Confederate money.” She kept it until her apprehensions for its safety became so great, that she determined to keep it no longer, and disposed of it as already narrated. “ Every day and every night, says the witness Lewis, squads of Federal soldiers were about, carrying off every thing they could lay their hands on.” Not a human being was on the place except three ladies. The slaves were gone. If she had not received the Confederate money when Barrow offered to pay his notes with it, she would have subjected herself to suspicion of disaffection or charge of treason, and might have got into serious trouble. If the Confederate money, or any other sort of money, had been found in her house by the soldiers, she would quickly have been relieved of all anx-, iety about its safety. There was no bank in the parish in which to deposit it. What could she do but give it to some friend to do with it as best he could ?
The legal question is, must an executrix be held to an absolute and unqualified responsibility for doing .what she could not avoid doing, under circumstances when she could not exercise any discretion, and *171 when she was doing what appeared to be the best thing to be done at that moment with her surroundings. We think not.
The paper that is called an account and which was filed and homologated in 1862 must have been a provisional tableau, for it was not until 1869 that the executrix, having shewn that she had paid all the-debts, was finally discharged. This suit was instituted in 1872, more than ten years after the tableau was filed, from which time the plaintiffs claim interest, and the plea of prescription is filed, but we do not think it necessary to pass on it.
We prefer to rest our decision upon the broad ground, that under the exceptional circumstances in which fiduciaries were placed by the existence of war, when localities were possessed and ravaged in turn by contending armies, and when under these difficult circumstances they acted with discretion, and honesty, they cannot be held responsible in law for losses which were inevitable as a result of the war.
The judgment of the lower court was rendered upon the verdict of a jury, and was for the defendant. It is correct and is affirmed.
Rehearing refused.